Moak *agt.* Foland.

*& Cres.* 729; 2 *Barn. & Ald.* 562; 1 *Chitty R.* 295; 4 *Dowl. & Ryl.* 283; 9 *John.* 370; *id.* 201; 15 *Wend.* 321). Thus, where an attorney brought a suit against a sheriff for not returning an execution which was in the hands of his deputy, and the deputy settled the amount of the debt, and paid the attorney his costs on the suit against the sheriff as made out, without taxation, and the *sheriff* subsequently brought an action and recovered judgment against the attorney for an excess of costs received; *held,* that the attorney was liable for such excess, although he offered to have the costs taxed, if the deputy requested it; they were received without taxation at his peril.

It appears from the case, that the suit was properly brought by the sheriff, although the deputy stated, when he paid the bill of costs, "that he should pay it himself, and bear the loss himself." It was a payment to and for the use of the sheriff, which discharged the suit against him, and was subsequently ratified by him in bringing the suit against the attorney. The sheriff was the only person who could disavow the acts of his deputy.

---

**Moak**, plaintiff in error, *agt.* **Foland**, defendant in error.

*Questions Discussed.*

1. Whether the contract, by virtue of which certain personal property was possessed, constituted a *sale* or *bailment*?

2. The *effect* of the contract if considered a *bailment.*

3. Whether a question of *fact* was made out sufficient to establish a *conversion.*

4. The effect in this court on conflicting evidence of facts in a Justice's Court.

This suit was brought in a Justice's Court in the county of Otsego, to recover in an action of trover, the value of certain fowls Moak (the defendant below) had received of Foland (the plaintiff below) under a contract between the parties for the keeping of the fowls and the division of the eggs; and which, after the expiration of the contract, the defendant (as was alleged) converted to his own use.

The contract originally made, authorized the defendant to keep the fowls which were left by the plaintiff on a farm he had rented to the defendant, during the term of his tenancy, which was two years. He also left other personal property on the farm with the defendant, during the same term. Before the expiration of the lease, a subsequent agreement was made between the parties that the defendant should leave the plaintiff's premises at an

Moak *agt.* Foland.

earlier period than that specified in the lease. The defendant on leaving the premises carried with him the fowls; to recover their value the suit was brought.

*Jacob Moak,* father of the defendant, was introduced by the plaintiff (Foland) as a witness, who testified that he resided with the defendant on the plaintiff's farm from April 1844, to March 1845; left defendant on the farm when he moved away; defendant had in his possession at the time he lived there some hens of Foland's; there might have been forty of them; might not have been half of that number; witness had thirty hens of his own there; Foland's hens were there when witness went there; there was a large flock; thought there might have been forty besides witness's. *Cross-examined:* Said he was informed by the plaintiff that he, plaintiff, had hens at his son's; plaintiff told him so, soon after witness moved there; witness had seen plaintiff take away some hens from defendant's after that time; took at one time seven or eight, which were in defendant's possession. *Direct:* Plaintiff was to have all the eggs of his own hens for a certain time, but not the whole season; had heard both parties say so; thought that plaintiff was to have three eggs to defendant's five; the division of the eggs ceased about the 1st of August. *Cross:* At the time defendant told witness that plaintiff was to have eggs from his own hens, he also stated that plaintiff was to have the first run of eggs; that plaintiff was to have nothing more to do with the hens, until two years had expired that defendant had hired plaintiff's place; heard plaintiff say that he had let defendant have the hens for the period of two years that defendant had hired the place. *Direct:* When plaintiff left the farm, he left the hens there; defendant had left the farm of plaintiff; he made an agreement with him before witness moved away; did not recollect of any thing being said about defendant having the privilege of taking off the hens from the place. *Cross:* Defendant was to leave the same number of hens he had of plaintiff on the farm, when his time was out; did not know of any thing being said that defendant was to leave the same hens; defendant made an agreement with plaintiff in February to leave the farm; plaintiff was to pay defendant $22, which was to settle all concerns up to that date, and defendant was to give up the farm on

the 1st of April following; did not hear any thing said in relation to the hens in that settlement; witness was called by the parties as a witness to the bargain. *Direct:* The $22 was for fall plowing, drawing stone, and other matters between them. Plaintiff stated the settlement without mentioning the items that constituted the $22; nothing was said except that the $22 settled up all matters between them to that date; did not recollect of any item being mentioned.

*Zachariah Foland,* father of plaintiff, sworn: Had a conversation with defendant at defendant's barn, shortly after the settlement between the parties, about the hens on the premises occupied by defendant; witness remarked that defendant had quite a number of hens; to which defendant replied yes, but when my father takes away his, and Hank (the plaintiff) his, I shall not have many left, because a great many have got away; defendant did not speak of the number of hens Henry had there; witness should think there were sixty or seventy hens there. *Cross-examined:* The settlement was made at witness's house; witness said, " this settles all things, up to this time," defendant said yes; plaintiff said, it is paid ($22) for fall plowing, drawing stone, and leaving the place; there was nothing said about the hens; it was stated that every thing was settled up to that date.

*James Foland,* brother of plaintiff, sworn: Was present when the terms of the settlement were agreed on; defendant was to give plaintiff all he had had of him, and leave the farm on the 1st day of April; nothing was said of any particular item that he had had of him. *Cross-examined:* The agreement was made in the fore part of January; they were talking about defendant's giving up possession of the farm; knew defendant had hired plaintiff's farm for two years, and the talk was about giving up the farm for the coming year; plaintiff agreed to give defendant $22 if he would give up possession of the farm. Fall plowing was spoken of, drawing stone, making stone wall; the fall plowing and drawing stone amounted to $22; there was no other account that witness knew of; they talked over all their matters. Defendant let witness have two hens for plaintiff, which he took away; witness did not recollect any thing being said at the set-

Moak *agt.* Foland.

tlement in relation to the hens; plaintiff and defendant had some dispute after the settlement as to whether the hens were mentioned; witness told them he could not recollect; plaintiff alleged that he reserved the hens in the settlement; the defendant denied' that he had. *Direct :* Plaintiff left with defendant other personal property besides the hens; he left a fanning mill, grind stone and stove; they remained there until after the settlement in the winter. *Cross :* At the time of the conversation about the settlement between the parties, the fanning mill and grind stone were not mentioned.

*Zachariah Foland, recalled :* After the settlement, witness was at defendant's house, and defendant brought out a pair of andirons and gave them to plaintiff; they were a pair that plaintiff left there.

Plaintiff introduced witnesses to prove the carrying away of the hens by defendant, and their value.

*John Welch, sworn for the defence :* Had heard the plaintiff, in March, speak of the defendant having some hens of him; plaintiff said he had let defendant have some hens for two years; that plaintiff and defendant had made arrangements, and plaintiff had taken the place back, and had paid defendant $22; and because plaintiff had not mentioned about the fowls when he made the arrangements, defendant was going to keep them and move them off. *Cross-examined :* The substance of what plaintiff said, was, that he had let defendant have fowls, and defendant had said he was going to take them away when he moved.

*Robert Cady, sworn for defence :* Heard plaintiff say that he had let defendant have some hens; it was about a year ago; plaintiff said he had let defendant have some hens—forty of them; out of the forty he was to have ten; plaintiff was to have the eggs of his hens until harvest time, and defendant was then to have them for two years; and at the end of two years he was to deliver to plaintiff thirty hens; plaintiff did not say that defendant was to return the same hens; defendant was to return thirty hens at the end of two years.

Defendant introduced witnesses to prove the value of the hens.

On the 24th of April 1845, the justice rendered judgment against the defendant for $8·12 damages, and $4·66 costs. The

Mook *agt.* Foland.

judgment was reversed on certiorari, by the Otsego Common Pleas, and affirmed by the Supreme Court on a writ of error; the latter court reversing the judgment of reversal of the Common Pleas. The cause was then removed to the Court for the Correction of Errors by the defendant.

The following is the opinion of the Supreme Court, upon reversing the judgment of the Common Pleas, and affirming that of the justice.

By the Court, JEWETT, Justice.—The principal question on the trial was one of fact; whether the contract entered into between the parties in relation to the fowls, created the relation of bailor and bailee between the parties, or whether it was a contract of sale of the fowls to the defendant. If the former, the conduct of the defendant in regard to his trust was such as was equivalent to a conversion; but if it amounted to a sale, the action could not be sustained. The evidence was conflicting upon the question; and although I am inclined to think the weight of the evidence was against the conclusion to which the justice arrived, the judgment should not have been reversed on that ground.

*C. D, Colman,* for plaintiff in error.

I. The contract, by virtue of which the plaintiff in error acquired the possession of the *fowls,* was one of *sale,* and not a bailment; and the justice erred in deciding that the *identical fowls* received, were to be returned at the end of the term of two years.

1. There was no *understanding* or *agreement* between the parties to the contract, that the *identical fowls* should be returned at the end of the term (*Smith* v. *Clark,* 21 *Wend.* 83).

2. There was an *express agreement* or *understanding* between the parties, that the plaintiff in error was to return the *same number* of fowls, at the end of the term (see *Case,* fol. 28 and 45; *Hurd* v. *West,* 7 *Cow.* 752; *Smith* v. *Clark,* 21 *Wend.* 83).

II. If the contract was one of *bailment,* and not a *sale,* it was a *bailment* for the term of two years; and the justice erred in giving judgment for the defendant in error (see *Case,* folios 26, 43 and 45).

Moak *agt.* Foland.

1. Only one year of the term of *bailment* had expired at the time of the commencement of the suit (see *Case*, folios 16, 22 and 45).

2. No *identity* of the fowls was in any manner shown, nor was any evidence given tending to show such *identity*, by which a question of fact for the consideration of the justice was in the least established.

3. There were " a great many" of the fowls " killed or carried off by foxes," or " got away" otherwise; and no negligence of the plaintiff in error was proved, or even pretended (see *Case*, folios 31 and 35; 2 *Kent. Com.* 585–6 and 7).

III. No *conversion* of the fowls by the plaintiff in error, was in any manner shown; nor was there any evidence given tending to establish such conversion, so as to make it a question of fact, for the consideration of the justice; and the justice erred, in deciding that a *conversion* was proved.

1. The contract contained no *stipulation* or *reservation*, requiring the plaintiff in error to keep the *fowls* upon the farm occupied by him.

2. But if it contained such *restriction*, there was no evidence given tending to show that they were *removed* therefrom by the plaintiff in error, or by any person in his employ or under his direction.

3. Even were this otherwise, the *fowls* having come *lawfully* into the possession of the plaintiff in error, it was necessary to prove a *demand and refusal* to deliver; no *sale* or *destruction* of the fowls being shown (15 *Petersdorff's Abrid.* 203; *Cow. Tr.* 2d ed. 302–3.

IV. The *subsequent* arrangement made between the parties in January 1845, in no manner changed the *rights* which the parties had acquired by virtue of the contract in relation to the fowls; nor did it in any manner change the *possession*, or the rights of the plaintiff in error to the possession of the fowls for the term of two years.

1. The contract in relation to the *fowls*, was not included in that arrangement; it merely related to the possession of the farm (see *Case*, folios 29, 33, 37 and 38).

2. But if it was, no *consideration* was paid for the relinquishment of the rights acquired by the plaintiff in error to the possession of the fowls. The $22 was paid for the "*possession of the farm* (see *Case*, folios 28, 29 and 37).

3. But if the fowls *were* included, and a *consideration* paid, it was merely an *executory* agreement and not *executed;* the fowls being neither *delivered*, or so far separated from the others, as to be capable of *identity*, or so as to be at the risk of the defendant in error; and did not give the defendant in error such a possession of the fowls, as enabled him to maintain trover for them (*McDonald* v. *Hewett*, 15 *John. R.* 349; 6 *East*, 614). If it amounted to a *resale* of the fowls, to the defendant in error, the same formality of *delivery* was necessary to invest the property in him, as was necessary to pass it from him (*Quincy* v. *Tilton*, 5 *Greenl.* 277). An *unexecuted* agreement to *rescind* a contract will not revest the goods in the vendor, although they may be in his *possession* (*Chapman* v. *Searle*, 3 *Pick.* 38). And if the plaintiff in error *violated* his agreement, the remedy of the defendant in error, if any, is by an action *upon* such agreement, for a *violation* thereof, and not in trover.

V. The justice erred in refusing to nonsuit the defendant in error upon the application of the plaintiff in error, after the testimony closed.

1. The plaintiff in error having established by *affirmative* proof a defence to the right of action, *conclusive* in its character, it was his duty to nonsuit.

2. The proof of a *settlement* of all matters existing between the parties, was *affirmatively* established by the testimony of the witnesses sworn on the part of the defendant in error; and was *conclusive* upon the right of the defendant in error to a *recovery*.

VI. The suit having been commenced by short *summons,* and the declaration of the defendant in error being in *trover*, the justice was thereby deprived of jurisdiction over the person of the plaintiff in error; the plaintiff in error being liable to be imprisoned upon a judgment recovered in an action of trover, the suit should have been commenced by warrant.

2

Moak *agt.* Foland.

VII. The justice erred in the admission of immaterial and improper testimony, under the objection of the plaintiff in error, and the whole case shows that there has been a palpable violation of law, upon undisputed facts.

*A. Dean,* for defendant in error.

I. The questions whether the contract or contracts under which the parties acquired their respective rights, constituted a bailment or sale of the fowls; and whether their removal by the defendant from the demised premises was a conversion, and what amount of damages the plaintiff had sustained thereby; were questions of fact, controverted on the trial, submitted to and passed upon by the justice, and his decision thereon was conclusive (*Noyes et al* v. *Hewitt,* 18 *Wend* 141; *Carman* v. *Newell,* 1 *Denio,* 25, 27).

II. The evidence in the case was sufficient to warrant the finding on the several questions in issue. For the evidence tending to establish the contract of bailment and the conversion of the fowls by their removal in violation of such contract, and the damages thereby resulting to the plaintiff, the court is referred to the following:

1. Evidence tending to establish the bailment. Jacob Moak, defendant's father, testified (fol. 22 of *Case*), that the defendant had hens of the plaintiff; that there might have been forty, and there might not have been half of that number. This witness states the proportions each party was to receive of the eggs (fol. 25 and 26). By the agreement to divide the eggs, the defendant recognized the ownership of the hens in the plaintiff. A bailment and not a sale was clearly indicated.

This witness after stating upon information derived from the defendant the terms on which the division was to be made of the eggs during a specified period, added that the defendant was to have nothing more to do with the hens " until the two years had expired that defendant had hired plaintiff's place" (fol. 26). A reasonable inference arises that at the expiration of the two years he was to have other rights, and in the absence of proof what these rights were, it may well be inferred that he was

to resume an absolute and unconditional control of the fowls, and that any interest the defendant had acquired therein would cease and be extinguished. The period during which the defendant was to retain possession of the fowls, was subsequently abridged, as will afterwards appear.

It is true this witness (the defendant's father), on his cross-examination, in reply to *leading questions* by the defendant's counsel, so modified his testimony as to state that it was not said that the defendant was to "leave the *same* hens," yet his testimony on his direct examination was competent testimony, and tended to establish the point in issue.

*Zachariah Foland* testifed (fol. 31 and 32) that he saw sixty or seventy hens about the defendant's barn. He remarked to the defendant that he had a great number of hens. The defendant replied that he had; but when his (the defendant's) father took away his hens and "Hank' (the plaintiff) "*his*" hens, there would be but few left. The defendant's father had eighteen hens (fol. 35).

It appears from the testimony that by the terms of the original contract, the hens, which the defendant received with other personal property of the plaintiff, a fanning mill, a grind stone, a stove and a pair of andirons (fol. 39), on leasing the farm, were to be kept during the two years for which he hired the farm. The period of two years is alluded to in the testimony as the period of the bailment merely as being contemporaneous with the tenancy of the farm. The proof in effect, was that the defendant was to keep the hens while he occupied the farm. It was afterwards agreed between the parties that the defendant should leave the farm before the two years had expired, for which it was originally leased (see testimony of Jacob Moak, Zachariah Foland and James Foland). With the determination of the tenancy the bailment was determined.

An express agreement to determine the bailment was also proven. *James Foland* (fol. 35) testifies that he was to leave the farm, and "to give the plaintiff ALL *he had had of him.*" Although no time was specified for the delivery of the personal property it is reasonable to infer that it was to be 'delivered when the defendant surrendered the possession of the premises.

The defendant could not have employed an expression of more comprehensive import than the one employed. It certainly applies as fitly to the hens as to the other personal property, and clearly embraces both. It appears affirmatively that the defendant recognized this agreement by surrendering the andirons (fol. 39).

It is contended that the identical hens were to be returned to the plaintiff. The plaintiff insists,

*First*, That it clearly appearing that the defendant had the plaintiff's hens in his possession, which the plaintiff on leasing his farm to the defendant left thereon, if by any agreement under which he received the hens, he had the right to return the same number of hens, and not the identical hens, *it was incumbent on the defendant to establish, by proof*, his right to return *other* hens.

*Second.* The agreement to return the identical hens, was abundantly established by affirmative proof.

The expression of the defendant, "*all he had had of him*," is significant as well of the identity of the property as of the universality of the description.

In speaking of the hens in question in numerous conversations (see testimony passim), the defendant invariably refers to them as his (the plaintiff's hens), fully recognizing the title of the plaintiff to the hens spoken of. The defendant also had hens of his father.

*Jacob Moak*, who testifies (folio 34) that he took away seventeen of his own hens, and the remaining one of the eighteen he could not catch. In the case then of Jacob Moak, the defendant recognized his (Jacob Moak's) right to his identical hens.

2. The conversion of the fowls by their removal by the defendant from the premises, after the defendant had left the premises, is established by the testimony of John Race (fol. 40 and 41).

3. *Damages.* Robert Cady, a witness called on behalf of the defence, testified (fol. 45) that the plaintiff said he had let the defendant have forty hens; thirty of which he was to return at the end of two years, and ten at an earlier period. The plaintiff had received nine, leaving thirty-one in the defendant's hands.

Moak *agt.* Foland.

It will be borne in mind that at the time of this conversation there was a subsisting agreement for the use and occupation by the defendant of the plaintiff's farm for two years, and the contemporaneous bailment of the hens, which period was subsequently abridged.

On this point, also, *Zachariah Foland* testified that he saw sixty or seventy hens about the defendant's barn (fol. 30 and 31); that the defendant said he would have *few* left after "Hank" (the plaintiff) had taken away *his* hens, and Jacob Moak had taken away his hens. The latter had eighteen hens (fol. 34). Several witnesses sufficiently attest the value of the hens.

III. The plaintiff insists that it appearing from the testimony that the plaintiff on leasing the premises to the defendant, left hens on the premises, in the absence of proof of the agreement under which they were left in the defendant's possession, the defendant would be liable in this action for carrying off the hens on removing from the premises.

IV. Objections were made by the defendant to the requirement by the justice of certain qualifications in the surety who executed the bond on an adjournment granted to the defendant. These, if well taken (and they were not), are not available here, as they were waived by the defendant proceeding to the trial of the cause.

Judgment affirmed, unanimously.

*Reported in this court,* 3 *How. Pr. R.* 84.

NOTE.—Where questions of fact arise in a cause before a justice of the peace, and evidence is given upon both sides in relation thereto, which is conflicting, it is for the justice to decide such questions, and having done so, this court will not reverse the judgment, although it may seem that the weight of evidence is against his decision.

Thus, where plaintiff let defendant have his farm for two years, and with the farm a number of fowls, and at the end of one year an agreement was entered into between the parties that defendant should give up the farm—which he did, but took away the fowls; and the plaintiff sued him in trover, and the evidence was conflicting on the trial whether the contract between the parties constituted a *sale* or *bailment* as to the fowls; *held,* that the justice having decided such question upon the evidence introduced on the trial, and given judgment thereon, it should be held conclusive.